BECKER, Circuit Judge,
concurring in part of the judgment and dissenting in part.
Federal Rule of Civil Procedure 15(c) was amended in 1991 “to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense.” Fed.R.Civ.P. 15, advisory committee’s note — 1991 amendment. I believe that the majority has lost sight of the motivation behind the 1991 amendment to Rule 15 as well as of the plain meaning of that Rule, and thereby has deprived the plaintiff of his day in court on the basis of a mere technicality. I respectfully dissent from Part IV of the majority’s opinion.
I concur with the majority, however, that Trop World was entitled to summary judgment on the issue of whether it breached a duty toward Lundy by not having more medical equipment and/or medically-trained personnel available in case of emergency, and hence I concur in much of Part III. However, I write separately on the issue of Trop World’s duties toward Lundy because I disagree with the majority’s conclusion that the New Jersey Supreme Court would rule that, even had Trop World been Nurse Slusher’s employer, Trop World would still be entitled to summary judgment. While I agree with the majority that Trop World is not liable for Nurse Slusher’s conduct only because she was employed by an independent contractor, I must discuss this point because if the majority is correct Dr. Carlino and Dr. Carlino, P.A. might be entitled to summary judgment even if they had been named as defendants *1185 from day one.[1]
I.The 1991 Amendment of Rule 15(c)
On April 30, 1991, the Supreme Court recommended an amendment to Rule 15(c)[2] and at the same time proposed an effective date of December 1, 1991. The stimulus behind the amendment was the harsh result in Schiavone v. Fortune, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986). In that case the plaintiffs had filed a timely libel complaint against “Fortune” rather than against “Time, Incorporated”, the owner of the Fortune trademark. Time’s registered agent had, based on the misnomer in the complaint, refused plaintiffs’ service a short time after the statute of limitations expired, but within the time allowed for serving the summons and complaint. The plaintiffs served their amended complaint containing the defendant’s correct name about two months later.
Confronted with the plain language of Rule 15(e), the Supreme Court held that the plaintiffs’ claim against Time was time-barred.[3] It took the Rule’s straightforward text to mean that the plaintiffs could not relate back the amendment of the defendant’s name on the complaint unless the “new” defendant had notice of the suit prior to the expiration of the statute of limitations. See 477 U.S. at 30, 106 S.Ct. at 2384 (“We do not have before us a choice between a ‘liberal’ approach toward Rule 15(c), on the one hand, and a ‘technical’ interpretation of the Rule, on the other hand. The choice, instead, is between recognizing or ignoring what the Rule provides in plain language. We accept the Rule as meaning what it says.”).
The Supreme Court recognized the spartan and admittedly arbitrary consequences of its holding and, acting on the recommendation of the Advisory Committee on Civil Rules and the Standing Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, soon thereafter recommended the aforementioned amendment to Rule 15(e), which Congress approved. The advisory committee, whose notes are accorded significant weight, see Schiavone, 477 U.S. at 31, 106 S.Ct. at 2385, explained that the new rule was designed
to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense.
ifc ^ #
Paragraph (c)(3) ... has been revised to change the result in Schiavone v. Fortune, supra, with respect to the problem of a misnamed defendant. An intended defendant who is notified of an action within the period allowed by Rule 4(m) for service of a summons and complaint may not under the revised rule defeat the action on account of a defect in the pleading with respect to the defendant’s name, provided *1186 that the requirements of clauses (A) and (B) have been met. If the notice requirement is met within the Rule 4(m) period, a complaint may be amended at any time to correct a formal defect such as a misnomer or misidentification. On the basis of the text of the former rule, the Court reached a result in Schiavone v. Fortune that was inconsistent with the liberal pleading practices secured by Rule 8.
Fed.R.Civ.P. 15, advisory committee note— 1991 amendment.
The fact that the result the Supreme Court reached in Schiavone led it shortly to amend the Rule is a sure reminder of the liberality of federal pleading practices. This liberality is expressed throughout the Rules[4] and is enshrined in a long and distinguished history-[5]
A. Retrospective Operation of the 1991 Amendment
Since Lundy conceded that the old Rule 15(e), which was in effect at the time he filed his complaint, would have barred his action against Dr. Carlino and Dr. Carlino, P.A. (collectively “the Carlinos”), the first question I must consider is whether the amendment applies retrospectively to cases pending in the district court at the time the amendment became effective.
Most courts of appeals have held that the amendment should normally operate retrospectively. See Woods v. Indiana University-Purdue University at Indianapolis, 996 F.2d 880, 886 (7th Cir.1993); Garvey v. Vaughn, 993 F.2d 776, 778, 783 n. 17 (11th Cir.1993); Skoczylas v. Federal Bureau of Prisons, 961 F.2d 543, 545-46 (5th Cir.1992); Hill v. United States Postal Serv., 961 F.2d 153, 155-56 (11th Cir.1992); Bayer v. United States Dep’t of Treasury, 956 F.2d 330, 334-35 (D.C.Cir.1992). The Supreme Court, as authorized by the Enabling Act, 28 U.S.C.A. § 2074 (Supp.1993), ordered the amended rule to be applied to all pending cases if “just *1187 and practicable.”[6] There certainly is no practicability objection to its retrospective operation. Thus the only remaining question is whether it would be “just” to apply the rule retrospectively.
Without oversimplifying, the justice of retrospective operation has already largely been accounted for in the context of Rule 15(c)(3) by the very terms of the Rule. That is, insofar as the Rule demands an inquiry into “prejudice” to and “knowledge” of the party to be added, it is safe to dispense with the justness inquiry at the retrospectivity stage of the analysis. See Woods, 996 F.2d at 886. Simply put, if the party to be added had notice and is not prejudiced, and knew or should have known that it was an intended party, it would not be unjust to apply the new rule retrospectively to that party. These considerations lead me to conclude that Rule 15(e) retrospectively applies to this case.[7]
B. Application of the Amended Rule
For an amendment to relate back under Rule 15(c), the party seeking the amendment must show that “the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.” Fed.R.Civ.P. 15(c)(3) (emphasis supplied). Although the majority dismisses Lundy’s complaint against the Carlinos on the “mistake” prong, I will in the interest of thoroughness discuss notice and prejudice in proper order and then turn to the question of what the Carlinos knew or should have known.
1. Did the Carlinos Receive Adequate Notice?
The question whether the Carlinos received adequate notice is comprised of two subissues: (i) may notice by a codefendant ever satisfy the notice requirement of Rule 15(c)? and (ii) was there in fact sufficient notice to the Carlinos within the 120-day *1188 extension that Lundy had instituted an action?
The interesting notice issue in this case is whether notice can be supplied by an original defendant who files a cross-claim against the newly named defendant; in general, the question is whether the plaintiff must actually serve a summons and complaint on the newly named defendant before the expiration of the 120 day period. I believe, contrary to the decision by the district court, that the fact that the Carlinos received notice from a third party should not be dispositive, “since it is unwise to place undue emphasis on the particular way in which notice is received.” 6 ChaRles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Praotioe and Pro-oedure § 1497, at 93 (2d ed. 1990).
This Court has seldom spoken on the meaning of “notice” in context of Rule 15(c). We have held that notice of the institution of the action implies more than notice of the event giving rise to the cause of action, Bechtel v. Robinson, 886 F.2d 644, 652 n. 12 (3d Cir.1989), and that much cannot be doubted as Rule 15(c) by its terms requires “notice of the institution of the action ” (emphasis supplied). A strict interpretation of notice was rendered under the pre-1991 incarnation of Rule 15(e) in Williams v. Army & Air Force Exchange Service, 830 F.2d 27 (3d Cir.1987), in which the plaintiff had filed a Title VII complaint against a federal agency rather than its head. This Court stated in a footnote that plaintiffs inquiries with the defendant agency did not place it on “notice” “[b]ecause only service constitutes notice.” 830 F.2d at 30 n. 2 (emphasis supplied).
I think service by a third party defendant satisfies even the strict standard of Williams, assuming that part of the case remains good law after the 1991 amendment and in light of its possible inconsistency with the earlier case of Varlack v. SWC Caribbean, Inc., 550 F.2d 171, 175 (3d Cir.1977). All that matters according to the terms of the Rule is satisfactory notice that the plaintiff has instituted an action, not actual service naming the defendant. See Varlack, 550 F.2d at 175 (holding that the district court did not commit clear error when it held defendant had adequate notice of the lawsuit when he coincidentally saw a copy of the complaint naming both the restaurant where he was a manager and an unknown employee as defendants within the limitations period, because he knew that the “unknown employee” referred to him); 6A Wright et al., Federal Practice and Procedure § 1498, at 129-30 (arguing in context of third-party practice like that involved here that “the better practice is to determine the propriety of amendment in light of the Rule 15(c) notice requirements”).
The language of amended Rule 15(c) and the advisory committee’s notes undergird my view. Had the drafters of Rule 15(c) contemplated that only actual service with a complaint and summons naming the party to be added would suffice, they could have avoided the precise but complex language they actually used and simply provided in its stead that an amendment changing a party would relate back if within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment is in fact properly served according to Rule 4. This they did not do. Rule 15(c) by its terms requires only sufficient notice such “that the party will not be prejudiced in maintaining a defense on the merits.”
The advisory committee note to the 1991 amendment — which, of course, postdates Williams — states that “[i]f the notice requirement is met within the Rule 4(m) period, a complaint may be amended at any time to correct a formal defect such as a misnomer or misidentification” (emphasis supplied). Although the advisory committee note does not explicitly mention service of process, it follows from the fact that the plaintiff cannot properly serve a party with process until the complaint names that party as a defendant (a predicate to the misnomer line of eases) that the note envisions that the plaintiff may, assuming appropriate notice is provided within the Rule 4(m) period, serve the defendant at any time, including after the expiration of the Rule 4(m) period. That is, a party may amend its pleadings to add a party although the party to be added was not actually served by the amending party with a *1189 complaint and summons within the Rule 4(m) period.
Having decided that actual service by the plaintiff is not a prerequisite under Rule 15(c)(3), the question then becomes what notice is sufficient to convey to the defendant the knowledge that the plaintiff has instituted an action. “The conclusion of a growing number of courts and commentators is that sufficient notice may be deemed to have occurred where a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means.” Kinnally v. Bell of Pa., 748 F.Supp. 1136, 1141 (E.D.Pa.1990); see, e.g., Berndt v. Tennessee, 796 F.2d 879, 884 (6th Cir.1986) (notice need not be formal); Eakins v. Reed, 710 F.2d 184, 187-88 (4th Cir.1983) (same); Kirk v. Cronvich, 629 F.2d 404, 407-08 (5th Cir.1980) (same); Swartz v. Gold Dust Casino, Inc., 91 F.R.D. 543, 547 (D.Nev.1981) (“The notice of the institution of the lawsuit required by Rule 15(e) need not be formal.”). I need not go so far as to embrace Kinnally’s liberal interpretation in this case, however, as the Carlinos actually received formal notice of Lundy's institution of a lawsuit when Trop World, within the period provided by Rule 4(m), served on them its Third Party Complaint with Lundy’s Complaint attached to it.
In sum, given the close interrelationship between notice and prejudice generally and in Rule 15(c) specifically, at least when the newly named defendant has received formal notice of the commencement of the action, albeit via a cross-complaint, I conclude that such notice will satisfy Rule 15(c)’s notice requirement if the defendant is not prejudiced in maintaining a defense on the merits. Cf. 6A WRIGHT ET AL., FEDERAL PRACTICE AND Procedure § 1498, at 123 (“A finding that notice, although informal, is sufficient ... frequently [depends] upon determining whether the party to be added would be prejudiced by allowing relation back under the circumstances of the particular case.”). This approach resists elevating technicalities over substance and defeating the policy that “ ‘mere technicalities’ ... not stand in the way of consideration of a case on its merits.” Torres v. Oakland Scavenger Co., 487 U.S. 312, 316, 108 S.Ct. 2405, 2408, 101 L.Ed.2d 285 (1988).
I consider next whether the Carlinos would be prejudiced in defending against Lundy’s tort claim.
2. Would the Carlinos Be Prejudiced?
The Carlinos argue in their brief that they would be prejudiced (although at oral argument they conceded there would be no prejudice) because their initial involvement in the case was simply to defend a contractual claim for indemnity and that to now “begin [a] defense on a negligence theory would require a completely different legal strategy as well as discovery and investigation, all of which [Lundy] has already completed.” Br. of Third Party Appellee at 8, 12-13. Nonbinding case law would support this contention (if it were true): prejudice may be established even though the defendant knows about and is involved in other, related actions if the defendant’s lack of knowledge of that action led it to conduct a factual inquiry different from the one it would have conducted had it known of that action. See Craig v. United States, 413 F.2d 854 (9th Cir.), cert. denied, 396 U.S. 987, 90 S.Ct. 483, 24 L.Ed.2d 451 (1969).[8]
*1190 The issue of prejudice, being primarily a question of fact, should be resolved by the district court in the first instance. See Woods, 996 F.2d at 886. In this ease, the magistrate judge was responsible for initially deciding Lundy’s Motion to Add Carlino as Original Party Defendants. In granting the motion, the magistrate judge rejected the Carlinos’ argument that they would be prejudiced if added as defendants (see App. 466a-69a (Letter Br. of Third Party Defendant, at 2-4 (June 22,1992))), finding instead that the “Carlino[s] will not be prejudiced by the amended complaint because as third party defendants, they have already engaged in the preparation of a defense in this action.” Mem.Op., Civ. No. 91-3183(WGB), at 7 (D.N.J. July 7, 1992) (Rosen, Mag. J.), in App. at 477a. Given the overwhelming support in the record for the magistrate judge’s conclusion,[9] I agree that the Carlinos suffered no prejudice on account of Lundy’s belated attempted amendment of his complaint to name them as defendants.[10]
Based on the foregoing, I conclude that the elements of Rule 15(c)(3)(A) have all been met. It remains to be seen if the same holds for the elements of Rule 15(c)(3)(B).
*1191 3. Should the Carlinos Have Known Lundy Was Mistaken About Their Identity?
a. Was Sufficient Notice Provided by the Third-Party Complaint?
In order for an amendment under Rule 15(c)(3) to relate back, the party seeking the amendment must also demonstrate that “the party to be brought in by amendment ... (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.” Fed.R.Civ.P. 15(c)(3)(B). The mistaken identity issue here can be separated into two subissues: (i) is mistaken identity limited to cases of misnomer or improper naming or does it also extend to cases where the plaintiff was mistaken about the identity of a separate defendant? and (ii) did the Carlinos know, or should they have known, that but for a mistake they would have been named as defendants from the outset? The majority disposes of Lundy’s claims without reaching the merits ostensibly because “Dr. Carlino [had] no reason during the relevant period to believe that the Lun-dys had intended to sue him.” Maj.Op. at 1183.
Lundy contends that on a fair reading of Paragraphs 2 and 4-8 of his Complaint,[11] the Carlinos knew or should have known that the claims were equally applicable to them and that, but for a mistake concerning the employer of Nurse Slusher, that Lundy would have named the Carlinos as defendants from the outset of the litigation. Br. of Appellant at 37. Agreeing, the magistrate judge ruled that within the 120-day allowance of (then) Rule 4(j) the Carlinos “should have been aware that but for a mistake concerning the appropriate employer of Ms. Slusher, the initial action would have been brought directly against [them].” Mem.Op., Civ. No. 91-3183(WGB), at 7 (D.N.J. July 7, 1992) (Ro-sen, Mag. J.), in App. at 477a. The district court purported to subject the magistrate judge’s ruling that the Carlinos should have known they were intended defendants to the “clearly erroneous or contrary to law” standard of Federal Rule of Civil Procedure 72(a). Mem.Op. at 14-15 (App. 622a-23a); see Snow Machines, Inc. v. Hedco, Inc., 838 F.2d 718, 727-28 (3d Cir.1988).
Laboring under what it believed to be a “clearly erroneous” standard of review as to the facts, the district court reversed the magistrate judge’s conclusion purely on legal grounds.[12] In particular, the district court *1192 held that Rule 15(c)(3) does not allow a party to add a “new defendant,” but instead allows only the correction of a “misidentification of a defendant.” Mem.Op. at 22, 24-25 (App. at 630a, 632a-33a). As developed infra at 1181-82, ruling is contrary to precedent binding on the district court, and the majority does not hold otherwise, see Maj.Op. at 1183 n. 14. Alternatively, the district court concluded that a Third Party Complaint cannot as a matter of law suffice to put the party to be added on notice that the plaintiff had made a mistake of identity. See Mem.Op. at 23-25. I have explained my reasons for disagreeing with this conclusion supra in Part I.B.I.
The majority does not rest its conclusion on either of these two legal grounds, though. Since the district court left the magistrate judge’s finding of fact undisturbed (that is, adopted it as correct for our purposes), as the majority acknowledges, see Maj.Op. at 1183 n. 14, we are to review the factual conclusion that the Carlinos should have known that they were intended defendants for clear error. See Varlack v. SWC Caribbean, Inc., 550 F.2d 171, 174 (3d Cir.1977) (establishing that the question of whether the conditions of Rule 15(c), including whether the party to be added “knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him,” have been met is a question of fact subject to review for clear error). Accordingly, the majority seems to be holding that the magistrate judge clearly erred in his finding, see Maj. Op. at 1183 n. 14, although it fails to point to any contrary evidence in the record besides the allegations in Lundy’s Complaint and Lundy’s delay.
(1) Adding a Party Under Rule 15(c)(3)(B)
Regarding the first issue, Rule 15(c) on its face applies to the changing of a party, not just to correcting a misnomer. The plain language of the rule states that the requirements of Rule 15(c)(3) apply to “amendment[s] changing] the party or the naming of the party” and therefore Rule 15(c) most clearly contemplates that changing a party can relate back. Since the Rule on its face draws no distinction between the two scenarios, I feel constrained to conclude that Rule 15(c)(3) allowed Lundy to relate back the addition of the Carlinos as defendants. See Business Guides, Inc. v. Chromatic Communications Enters., Inc., 498 U.S. 533, 540, 111 S.Ct. 922, 928, 112 L.Ed.2d 1140 (1991) (holding that courts are to ‘“give the Federal Rules of Civil Procedure their plain meaning’ ” (quoting Pavelic & LeFlore v. Marvel Entertainment Group, 493 U.S. 120, 123, 110 S.Ct. 456, 458, 107 L.Ed.2d 438 (1989))).
Adding a party is essentially no different from changing a party. The minor difference between the addition and the replacement of a party is whether the original defendant is dismissed in addition to the new defendant being added, which is not ipso facto conclusive as to what the defendant to be added knew or should have known concerning whether the plaintiff was mistaken about the newly-added defendant’s identity. Most courts have thus held that a new party may be added or substituted for another.[13] *1193 Most importantly, this Circuit has interpreted Rule 15(c) to allow for the addition of a new party. See Bloomfield Mech. Contracting, Inc. v. Occupational Safety & Health Review Comm’n, 519 F.2d 1257, 1262 (3d Cir.1975) (explaining, in the context of the addition of other parties, that the purpose of Rule 15(c) “is to ameliorate the effect of a statute of limitations where the plaintiff has sued the wrong party but where the right party has had adequate notice of the institution of the action” (emphasis supplied)).
Allowing for the addition of a new party is particularly compelling in circumstances where, as here, the need for the addition was caused by the plaintiff’s misunderstanding concerning the fact that two separate legal entities were operating within the same physical structure. Certainly the separate legal entity (in this case the Carlinos), especially when it is not normally expected, to be engaged at the premises (as presently is the case), has reason to know that it has not been named because of ignorance of its separate legal existence. That is true even more so in a case such as this where the plaintiff was unconscious during the happening of the relevant events and hence obviously could not have been aware of such legal niceties.
(2) What the Carlinos Should Have Known
As to the second subissue, concerning what the Carlinos knew or should have known, Lundy asserts that the Carlinos should have known that, but for Lundy’s mistake concerning Nurse Slusher’s employer, Lundy would have named them as defendants when he first filed his complaint. I agree with Lundy that the magistrate judge did not clearly err. First, Lundy’s Complaint indicated that he was proceeding under a theory of respondeat superior. See App. 10a (Complaint ¶2). Given the lax nature of notice pleading under the Federal Rules of Civil Procedure[14] and the circumstance that Lun- *1194 dy was without his faculties during the relevant time frame, it was not incumbent upon Lundy to name the particular employees involved and not involved in his medical emergency, the majority’s implications notwithstanding, see Maj.Op. at 1183 n. 14 (apparently conceding that, had Lundy expressly named Nurse Slusher, the Carlinos should have known of the mistake).
In addition, Lundy alleged that the substance of Trop World’s negligence was its failure to provide proper first aid facilities and medical treatment. See App. 11a (Complaint ¶¶ 5-7). Thus, had Nurse Slusher and Dr. Carlino been employees of Trop World instead of independent contractors, anyone would immediately conclude that Trop World should have known that in his complaint Lundy alleged that Nurse Slusher’s and/or Dr. Carlino’s negligence caused Lundy’s injuries. The fact that another entity was Nurse Slusher’s employer does not take much away from the force of the conclusion that her employer was fully implicated in the lawsuit. Since the Carlinos knew that they and not Trop World were responsible for Nurse Slusher and the medical facilities at Trop World, the Carlinos should have known that (1) Nurse Slusher’s alleged negligence and Trop World’s alleged negligent failure adequately to prepare for medical emergencies was the gravamen of Lundy’s complaint (the merits of this claim are, of course, irrelevant at this juncture); (2) Lundy was simply confused about the employer of Nurse Slusher; and (3) Lundy was unaware that Trop World had delegated to the Carlinos the responsibility to provide medical care to patrons and guests. Had the Carlinos, charged with familiarity with the events of that evening, genuinely considered whether they were intended defendants when served by Trop World, they would have concluded “very likely,” and I think that satisfies Rule 15(c)(3)(B).
In my view, no competent attorney cognizant of the federal rules reading Lundy’s complaint and aware of the facts as known to the Carlinos would have thought the Carlinos were completely off the hook. One cannot expect Lundy to have possessed the prescience to discover that Nurse Slusher was an independent contractor rather than an employee before filing his complaint. The majority does not suggest why the Carlinos could reasonably expect that Lundy knew this fact and was merely making a “strategic” choice not to sue the responsible entity. It will be when this opinion is filed that the Carlinos for the first time since receiving Trop World’s Third Party Complaint will be able to breathe a sigh of relief.
*1195 The cases the majority relies upon are readily distinguishable. Lovelace v. O’Hara, 985 F.2d 847, 850-51 (6th Cir.1993) held that the defendant in an action under 42 U.S.C.A. § 1983 (1981) had no reason to believe that the plaintiff would amend her complaint to sue him in his individual capacity because the plaintiff’s original complaint unequivocally “evidence[d] an intentional choice ... to bring an official capacity suit.” There the plaintiff had known of the defendant’s identity and exact involvement in the events responsible for the case all along. Moreover, the court stressed that the amendment would have prejudiced the defendant, since the amendment would have exposed the defendant to personal liability, altered the elements of recovery and defense, and required major changes in pleading, discovery, trial preparation, and selection of witnesses. Similarly, in Curry v. Johns-Manville Corp., 93 F.R.D. 623, 626-27 (E.D.Pa.1982) the court held that a third-party claim by the original defendant did not provide the third-party defendant with reason to know that plaintiff may sue it where plaintiff actually knew the identity of the third-party defendant and its part in the underlying events long before the expiration of the statute of limitations. Those cases share the common rationale that, where the defendant that the plaintiff seeks to add knew that the plaintiff was aware long before the statute of limitations expired both of that defendant’s particular role in the underlying events and of its separate legal identity, that defendant was reasonably led to believe that the plaintiff deliberately chose not to name it as a defendant from the outset. That rationale is inapposite to this case.
b. The Matter of Lundy’s Delay in Amending His Complaint
Moreover, I am driven to conclude that Lundy’s lengthy, unexcused delay in amending his complaint does not affect the analysis of whether the Carlinos should have known that, but for a mistaken identity, Lundy would have named them in his original complaint. Although the Carlinos do not phrase it as such, they essentially argue that Lundy inexcusably neglected to name them as defendants for approximately eight months after Lundy learned that the Carlinos were Trop World’s independent contractors. See Br. of Third Party Appellee at 8-9, 13.[15] The district court espoused a similar legal theory, and the majority also seems to latch onto it. See Maj.Op. at 1183; Slip Op. at 23, in Br. of Appellant at 67.
Some courts of appeals specifically include undue delay as a component of the “should have known” prong of the Rule 15(c) analysis. But those cases are in the main very different, because in them the parties to be added never had notice during the Rule 4(m) period that they were intended defendants in the action in question, and the plaintiff’s pro *1196 crastination occurred during the limitations period.[16]
More on point is Seber v. Daniels Transfer Co., 618 F.Supp. 1311, 1313-14 (W.D.Pa.1985). There the court allowed the plaintiff to relate back his second amended complaint filed on August 6, 1984, to the date of his original complaint, March 30, 1984. The statute of limitations on plaintiffs age discrimination claim expired on April 1, 1984. The court found there was no “undue delay” despite the four months it took plaintiff to amend his complaint because “counsel underwent a contentious period of discovery during which it may have been difficult to identify all responsible parties and their positions.” Id. at 1314. The court did not find the delay dispositive, but held instead that the “plaintiff here may take advantage of a rule designed to prevent overly technical applications of the statute of limitations where it appears that responsible parties will not be unfairly prejudiced in defending against an otherwise untimely lawsuit.” Id.
As the Court of Appeals for the Tenth Circuit sagaciously pointed out in Anderson v. Deere & Co., 852 F.2d 1244, 1247-50 (10th Cir.1988),[17] so long as the defendant had notice, was not prejudiced, and should have known of plaintiffs mistake within 120 days of the expiration of the statute of limitations, the language of Rule 15(c) does not distinguish between timely and untimely amendments. See Fed.R.Civ.P. 15(c) advisory committee note — 1991 amendment (assuming the other requirements are met, “a complaint may be amended at any time to correct a formal defect such as a misnomer or misiden-tification” (emphasis supplied)). Conspicuously absent from Rule 15(c) is any hint that the complaint must be amended within the Rule 4(m) period — it speaks only of notice, lack of prejudice, and reason to know of a mistake within that time frame. See supra at 1179. Obviously receipt of service after amendment of the complaint would provide all three, but it is not a prerequisite. The courts to hold otherwise neglect the liberal policy supporting the Rules and essentially punish the plaintiff when no prejudice or harm results to the defendant.
Rule 15(c) is subject to Rule 15(a), which provides that a court shall freely give leave for a party to amend its pleadings “when justice so requires.” That subsection, not Rule 15(c), is the correct one to deal with the delay aspect of the amendment. No doubt undue delay causing prejudice could bar Lundy from amending his complaint to add a newly-named defendant under Rule 15(a) because in such situations justice would not require it. See, e.g., Adams v. Gould Inc., 739 F.2d 858, 867-68 (3d Cir.1984) (“[Ujnder the liberal pleading philosophy of the federal rules as incorporated in Rule 15(a), an amendment should be allowed whenever there has not been undue delay, bad faith on the part of the plaintiff, or prejudice to the defendant as a result of the delay.”). This Court has often held that, absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless “denial [can] be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment.” Bechtel v. Robinson, 886 F.2d *1197 644, 652-53 (3d Cir.1989) (internal quotation omitted); Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of V.I., Inc., 663 F.2d 419, 425 (3d Cir.1981) (same), cert. denied, 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982).
Similar in result is Skehan v. Board of Trustees, 590 F.2d 470 (3d Cir.1978), cert. denied, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979), in which the district court had not even addressed Rule 15(c) since it refused to allow an amendment under Rule 15(a) regardless of whether Rule 15(c) would countenance it. There we held that “Although district courts are required to allow amendments under the terms of [Rule 15(a) ], certain factors, such as undue prejudice to the other party and undue delay by the movant, have been found to establish sufficient justification for the denial of such motions.” Id. at 492 (emphasis supplied).[18] That is because “prejudice to the nonmoving party is the touchstone for the denial of the amendment.” Arco Chem. Co., 921 F.2d at 488 (quoting Bechtel, 886 F.2d at 652) (internal quotations omitted); see Evans Prods. Co. v. West Am. Ins. Co., 736 F.2d 920, 923 (3d Cir.1984) (“The primary consideration in determining whether leave to amend under Fed.R.Civ.P. 15(b) should be granted is prejudice to the opposing party.”). But as discussed above, see supra Part I.B.2, the Carli-nos were not prejudiced by Lundy’s delay.
Moreover, this Court has repeatedly stated outright that unexcused delay unaccompanied by real detriment to the defendant or to the judiciary does not constitute undue delay.[19] That is because undue delay refers solely to delay in the proceedings, not to delay in amending the pleadings.[20] The animating spirit of Rule 15, in short, does not sanction a ruling that would punish a party for delaying an amendment to the complaint. *1198 See Anderson, 852 F.2d at 1248-49 & n. 15 (suggesting, though, that Rule 11 sanctions may be appropriate).
To summarize, in this case the Carlinos suffered no actual prejudice, and, the amendment having occurred before trial was scheduled, there was no undue delay in the proceedings. Hence Lundy’s delay in amending his complaint to name the Carlinos as defendants is completely beside the point. Consequently, I conclude that the district court should have allowed Lundy to amend his complaint to add the Carlinos as original party defendants.[21]
As a final note on the delay factor, it has not eluded me that the Carlinos were intent on not getting themselves involved in this lawsuit. At no time did they seek or receive assurances that Lundy would not add them as defendants. For this reason, I do not believe the delay was material to what the Carlinos should have known: once having been put on notice during the limitations period, the absence of a quick amendment did not take them off notice. Cf. Kilkenny, 800 F.2d at 857 (plaintiff was informed of the proper defendants long before expiration of the limitations period) (“A plaintiffs failure to amend its complaint to add a defendant after being notified of a mistake concerning the identity of a proper party ... may cause the unnamed party to conclude that it was not named because of strategic reasons rather than as a result of plaintiffs mistake.” (emphasis supplied)); Potts v. Allis-Chalmers Corp., 118 F.R.D. 597, 608-09 (N.D.Ind.1987) (same).
Moreover, considering the parties’ repeated and close interactions, the Carlinos could easily have set their minds at ease, but did not, perhaps in the hope that they would obtain the outcome the majority now hands them. Hence I do not agree with the majority that the Carlinos’ suspicions evaporated over time (even assuming that were relevant), or, indeed, with its hyperbole that the Carlinos “had affirmative reason to believe that the Lundys did not wish to assert liability against [them].” Maj.Op. at 1183.
Based on the foregoing, I would vacate the district court’s order and decision denying Lundy’s motion to relate back the amendment of his pleadings to add the Carlinos as original party defendants, and remand with instructions to reconsider the magistrate judge’s recommendation using the proper legal standards.
II. Duties a Landowner Owes a Business Invitee in New Jeesey
Although I concur with the majority in its disposition of Lundy’s claim against Trop World in Part III.A of the majority opinion, I write separately to express my disagreement with the majority’s conclusion in Part III.B that under New Jersey tort law Trop World would be entitled to summary judgment even if Nurse Slusher had been its employee. See Maj.Op. at 1179-80, 1180-81. Although the precise holding reached by the majority escapes me, see infra at 1191-92, the majority appears to conclude that Trop World fully satisfied its duties toward Lundy when it called for emergency help.
Because I conclude that Trop World was under a duty to take reasonable affirmative steps to assist Lundy when he suffered a cardiac arrest in addition to summoning emergency care, a position the majority at points appears to accept hypothetically to be the law, see Maj.Op. at 1179-80, 1180-81, I do not believe that New Jersey’s Good Samaritan Act, 2A N.J.Stat.Ann. § 62A-1, would shield Trop World (according to the majority’s hypothetical) from liability were it Nurse Slusher’s employer, or the Carlinos from liability had they effectively been made defendants in this case. I also believe that the question whether Nurse Slusher behaved reasonably under the circumstances when she refused to retrieve the intubation kit from her office when Dr. Greenberg requested it is a question a jury should answer.
*1199 A. General Principles of New Jersey Tort Law
Absent a duty, a party cannot be held liable for negligent conduct under principles of New Jersey negligence law. See Weinberg v. Dinger, 106 N.J. 469, 524 A.2d 366, 373-74 (1987). In New Jersey, the question whether a duty exists is a matter of law and rests largely on questions of fairness and public policy. Cheng Lin Wang v. Allstate Ins. Co., 125 N.J. 2, 592 A.2d 527, 534 (1991); Kelly v. Gwinnell, 96 N.J. 538, 544, 476 A.2d 1219, 1222 (1984). “ ‘The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution.’ ” Cheng Lin Wang, 592 A.2d at 534 (quoting Kelly, 96 N.J. at 544, 476 A.2d at 1222). I bear in mind that the New Jersey Supreme Court values flexibility, see Wytupeck v. Camden, 25 N.J. 450, 462, 136 A.2d 887 (1957), and that in New Jersey the question whether or not a duty exists will depend on the facts of each case, Cheng Lin Wang, 592 A.2d at 534.
New Jersey has set the standard of care a landowner owes another based on the relationship or status between the parties. See Snyder v. I. Jay Realty Co., 30 N.J. 303, 153 A.2d 1, 5 (1959). New Jersey distinguishes among invitees, who “first come by invitation, express or implied;” licensees, “who are not invited but whose presence is suffered;” and trespassers, who “are neither invited nor suffered.” Id. (internal quotations omitted). All parties agree that Lundy was a business invitee. See Br. of Appellant at 17; Br. of Appellee at 13. With this background in mind, I will tackle the formidable question whether a jury could find that the Carlinos (or Trop World, assuming it was Nurse Slusher’s employer) breached a standard of care they owed to Lundy.[22]
B. Duties Arising from the Landowner-Invitee Relationship
Neither the parties nor I has found any decision by the New Jersey Supreme Court, or any other New Jersey court, treating the question presented, namely, the scope of a business’ duty, if any, to aid or assist a business invitee when an invitee requires emergency aid through no fault of the landowner.[23] In this predicament I cannot help but resort to treatises and decisions in sister jurisdictions to divine how the New Jersey Supreme Court would rule, keeping in mind its general policies toward tort liability.[24]
As the majority notes, the early common law of England, later transposed to the United States, did not recognize a duty to rescue or assist another who was too ill to take care of him- or herself. A sense of rugged individualism combined with the harsh realities of industrialization formed an impenetrable shield of immunity around all who failed to help, even those who could, with the greatest *1200 of ease, prevent the most violent and senseless of deaths. Over the years, as commentators decried these decisions as revolting and an outrage to the moral conscience, courts worked widening inroads on that antiquated and perverse doctrine.
The clearly prevailing view today is that social policy justifies the imposition of a duty to act if one of a burgeoning group of special relationships exists between the parties. See generally W. Page Keeton et al., The Law of TORTS § 56, at 373-76 (5th ed. Lawyers ed. 1984); 3 Fowler v. Harper et al., The Law of Torts § 18.6, at 718-21 (2d ed. 1986). Absent such a special relationship, the unquestionably widely prevailing view still is that there is no duty to rescue the helpless. See, e.g., Rest.2d Torts § 314 & cmt'. c (1965). See generally Jay Silver, The Duty to Rescue: A Reexamination and Proposal, 26 Wm. & Mary L. Rev. 423 (1985).
The special relationship bearing on this ease is that between a business and an invitee. See supra at 1191. The Restatement (Second) of Torts § 314A[25] succinctly explains the business’ duty in that context:
(1) A common carrier is under a duty to its passengers to take reasonable action
(a) to protect them against unreasonable risk of physical harm, and
(b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.
(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.
Rest.2d Torts § 314A (emphasis supplied). The essential imperative to be drawn from this language is the directive of “reasonable action.”
Contrary to the apparent holding of the majority, see infra at 1191-1192, I deduce from the case law that “reasonable action” may exceed the mere summoning of emergency care. The modern, general common law recognizes that, where the law imposes a duty to rescue, in harmony with general principles of negligence law it demands of those subject to the duty of reasonable care under the circumstances. See Keeton et al., The Law of Torts § 56, at 377. For example, one renowned commentator writes that the one owing the duty “will seldom be required to do more than give such first aid as he reasonably can, and take reasonable steps to turn the sick person over to a doctor or to those who will look after him until one can be brought.” Ibid, (emphasis supplied); accord Rest.2d Torts § 314A cmt. f.[26]
Based on these sources, I believe that the New Jersey Supreme Court would recognize that a business owes its invitees a duty thus circumscribed. But I cannot canvass only learned works, but must sojourn forth beyond New Jersey’s frontiers to survey its sister jurisdictions in order to gain a sense of how this duty has played out in similar situations. Though I have located no case on all fours with the one sub judice, the cases I have found generally support the views of the commentators and the Restatement quoted above, and many are close enough to provide fruitful guidance. I enumerate them in the margin.[27]
*1201 Although, as already stated, no New Jersey case directly on point has been found, some older, related decisions confirm that the New Jersey Supreme Court would likely announce the duties as I have described them. The most pertinent case is Szabo v. *1202 Pennsylvania R.R. Co., 132 N.J.L. 331, 40 A.2d 562 (1945), in which the predecessor court to the New Jersey Supreme Court pinpointed the standard of care an employer owes an employee:
It is conceded that in this and other jurisdictions the law is, that in the absence of a contract or a statute, there rests no duty upon an employer to provide medical service or other means of cure to an ill, diseased or injured employee, even though it result[s] from the negligence of the master.
In our judgment there is a sound and wise exception to this rule, founded upon humane instincts.
That exception is, that where one engaged in the work of his master receives injuries, whether or not due to the negligence of the master, rendering him helpless to provide for his own care, dictates of humanity, duty and fair dealing require that the master put in the reach of such stricken employee such medical care and other assistance as the emergency, thus created, may in reason require, so that the stricken employee may have his life saved or may avoid further bodily harm. This duty arises out of strict necessity and urgent exigency. It arises with the emergency and expires with it.
Szabo, 40 A.2d at 562 (citations omitted) (emphasis supplied); accord Lanier v. Kieckhefer-Eddy Div. of Weyerhaeuser Timber Co., 84 N.J.Super. 282, 201 A.2d 750, 753-54 (1964). The court explained that, while the foreman “was not called upon to correctly diagnose decedent’s particular ailment,” he should have known of decedent’s inability to care for himself, and it was a question for the jury whether the employer breached his duty by simply delivering decedent to his home, where he was left helpless and alone, instead of to his family, a physician, or a hospital. See Szabo, 40 A.2d at 562-63; accord Burns v. Bakelite Corp., 17 N.J.Super. 441, 86 A.2d 289, 290-91, certif. denied, 9 N.J. 335, 88 A.2d 366 (1952). I read Szabo and its progeny as fully in support of my view that, under New Jersey Law, a business has a duty to summon medical aid and take other reasonable steps to assist its invitees who fall helplessly ill, but not actually to prepare for such contingencies or to provide medical aid beyond the pre-existing abilities of those who happen to be present.
I therefore conclude that the New Jersey Supreme Court would, if presented with a case like this one, hold that the business owed the invitee a (preexisting) duty to summon medical aid reasonably promptly and to take other reasonable steps under the circumstances to save its invitees from emergencies beyond the invitee’s or his or her companions’ capacity to ward off, but would not further require the business to afford the invitee first aid or emergency medical care or equipment beyond that which happens to be reasonably available at the time of the emergency.[28]
As already said, I agree with the majority, in light of the arguments raised in Lundy’s brief, that Trop World did not breach its duty to summon medical assistance promptly.[29] But I am far less convinced that Nurse Slusher acted reasonably in refusing to fetch the intubation kit located close by when Dr. Greenberg requested it, enough so that I *1203 believe a jury should be empaneled to consider this point.
The pertinent facts established by the deposition testimony are as follows. An intubation kit, or at least enough of the equipment to make do, was inventoried in Nurse Slush-er’s office, one floor above the pit where Lundy lay fighting for his life. App. at 217a (Dep. of Dr. Greenberg); App. at 153a, 154a-55a (Dep. of Nurse Slusher). After Nurse Slusher arrived at the scene, Dr. Greenberg identified himself as a doctor and requested an intubation kit. App. at 212a, 215a (Dep. of Dr. Greenberg); App. at 241a-42a (Dep. of Mrs. Greenberg). Nurse Slusher responded that Trop World policy prevented her from employing an intubation kit, and she apparently misrepresented that no intubation kit was on the premises. App. at 216a (Dep. of Dr. Greenberg); App. at 241a-42a (Dep. of Mrs. Greenberg). Because there were two doctors and another registered nurse in attendance, App. at 159a, 161a-62a (Dep. of Nurse Slusher), and because the other registered nurse alternated using the ambu-bag on Lundy with Nurse Slusher, App. at 240a-41a (Dep. of Mrs. Greenberg), a jury could reasonably conclude that someone other than Nurse Slusher could have operated her ambu-bag while she made haste to secure the intubation kit such a short distance away from a dying man.
Of course, insofar as Trop World was under no preexisting duty to render first aid to Lundy in the first place, to the extent it did so New Jersey’s Good Samaritan Act would shield it from liability (so long as it acted in good faith). See Maj.Op. at 1179-80. Again, I emphasize that I think there is a jury question of negligence here only because a jury could view getting the intubation kit from the office and handing it to Dr. Green-berg to be a reasonable step (and hence one which would fall within its “preexisting duty”), as it does not encompass rendering first aid beyond the actual preexisting ability of anyone present in the normal course of things to perform. That is, if the jury were to view that step as reasonable in light of the proximity of the intubation kit and the medical emergency at hand, then Trop World would have been under a “preexisting duty” to take that step, and the Good Samaritan Act would not shelter its failure to do so. See Praet v. Borough of Sayreville, 218 N.J.Super. 218, 527 A.2d 486, 489 (1987) (holding that the Good Samaritan Act does not immunize “one who has either a contractual, relational, or a transactional duty to render assistance” (emphasis supplied)). Here, Nurse Slusher did not retrieve the intubator kit available to her when Dr. Greenberg requested it, an act which would not itself comprise the furnishing of medical care but which a jury could reasonably consider to be simply a reasonable step not too dissimilar from summoning emergency care.
I am puzzled by the majority’s opinion in this respect. First, it seems to assume, for the sake of argument, that Trop World owed Lundy the “preexisting duty” to “provide such first aid prior to the arrival of qualified assistance as the [casino’s] employees are reasonably capable of giving.” Maj.Op. at 1179-80. Moreover, operating under its hypothetical that Nurse Slusher was a Trop World employee, it assigns those same duties to Nurse Slusher. Maj.Op. at 1180-81. But then it decides that Nurse Slusher’s assumed duty to “provide such first aid” as she was “reasonably capable of giving” does not include running up a flight of stairs to retrieve a medical device for a doctor attending a critically ill patient. See Maj.Op. at 1180-81.
Although the majority does not spell it out, I surmise that it did not mean to say that Nurse Slusher was not “reasonably capable” of running up a flight of stairs to retrieve the potentially life-saving intubation kit. Thus, it must have concluded Nurse Slusher breached no duty toward Lundy because, as a matter of law, it is not “first aid” for a nurse to retrieve a nearby medical instrument for a doctor in an emergency. That conclusion, however, leaves me perplexed, even leaving aside any notion of “the greater includes the lesser” (that is, that the greater duty to provide reasonable first aid includes the lesser duty to take reasonable steps other than the provision of minimal emergency medical care, see supra at 1200 n. 27 (discussing cases)). I simply do not understand why the majority concludes as a matter of law that *1204 Nurse Slusher breached no “preexisting duty” toward Lundy.
Based on the fact pattern in this case, I conclude that a jury should properly determine whether Nurse Slusher’s employer (by operation of respondeat superior) acted reasonably under the circumstances as described or whether it breached its duty toward Lundy. Accordingly, I respectfully dissent from the majority’s contrary conclusion.
III. Conclusion
Because I believe that Rule 15(c) authorizes the relation back of amendments adding a new party and that the Carlinos were afforded proper notice of the institution of this action when served with Lundy’s Complaint by Trop World in its Third-Party Complaint, I would reverse the district court’s contrary legal conclusions and remand for its reconsideration using the correct legal standard of the magistrate judge’s findings of fact and conclusions of law. Therefore I respectfully dissent from the majority’s judgment affirming the district court’s refusal to permit Lundy to amend his Complaint to relate back his addition of the Carlinos as defendants.
I also note my disagreement with the majority’s conclusion that, even were Trop World Nurse Slusher’s employer, it would be entitled to summary judgment. Nevertheless, because Nurse Slusher was employed by an independent contractor (the Carlinos), and because Lundy has not appealed the district court’s ruling that under New Jersey law Trop World could not be held accountable for their conduct, I concur with the majority’s judgment that Trop World is entitled to summary judgment.

. Lundy has not appealed the district court's rulings that Dr. Carlino and Dr. Carlino, P.A. were independent contractors and that this case does not fit into the exceptions New Jersey recognizes to nonliability for an independent contractor’s conduct.

. The Rule now provides in pertinent part:
Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when
(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.
Fed.R.Civ.Proc. 15(c). The time period provided by Rule 4(m) is 120 days, subject to extensions for good cause shown. See Fed.R.Civ.P. 4(m).

.The Rule as it existed then provided that " ‘[a]n amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.’" Schiavone, 477 U.S. at 24 n. 5, 106 S.Ct. 2381 n. 5 (quoting FedR.Civ.P. 15(c) (1990)) (emphasis supplied).

. See, e.g., Fed.R.Civ.P. 1 (“These rules ... shall be construed and administered to secure the just, speedy, and inexpensive determination of every action.” (emphasis supplied)); id. 8(f) ("All pleadings shall be so construed as to do substantial justice.” (emphasis supplied)); id. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.” (emphasis supplied)).

. See, e.g., Torres v. Oakland Scavenger Co., 487 U.S. 312, 316, 108 S.Ct. 2405, 2408, 101 L.Ed.2d 285 (1988) ("[T]he requirements of the rules of procedure should be liberally construed and ... ‘mere technicalities' should not stand in the way of consideration of a case on its merits[.] ”); Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 373, 86 S.Ct. 845, 851, 15 L.Ed.2d 807 (1966) ("If rules of procedure work as they should in an honest and fair judicial system, they not only permit, but should as nearly as possible guarantee that bona fide complaints be carried to an adjudication on the merits.”); Foman v. Davis, 371 U.S. 178, 181, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) ("It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of ... mere technicalities.”); Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) ("The Federal Rules [of Civil Procedure] reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.”); Maty v. Grasselli Chem. Co., 303 U.S. 197, 200, 58 S.Ct. 507, 509, 82 L.Ed. 745 (1938) ("Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should notse barriers which prevent the achievement of that end.”); see also 2A James Wm. Moore & Jo D. Lucas, Moore’s Federal Practice ¶ 8.02, at 8-10 (2d ed. 1994) (“The real importance of the pleading rules is that they make pleadings, in and of themselves, relatively unimportant. Cases are to be decided on the merits.”); 2 id. ¶ 1.13[1], at 1-59 ("[Rule 1] sets a theme of liberality in the application of the procedural rules and fosters the principle that the outcome of cases should turn on their merits rather than on technical issues of pleading and procedure.”); 3 id. § 15.15[2], at 15-146 ("The general philosophy of the pleading rules is that they should give fair notice, should be liberally construed, be subject to liberal amendment, and that decisions should be on the merits and not on technical niceties of pleading.” (footnotes omitted)); 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1286, at 558-59 (2d ed. 1990) ("[A]n inadvertent mistake in a pleading will not be held against the pleader if another party has not been misled by the mistake or otherwise prejudiced.”); 4 id. § 1029, at 118 ("The federal rules are designed to discourage battles over mere form and to sweep away needless procedural controversies that either delay a trial on the merits or deny a party his day in court because of technical deficiencies.”).

. Specifically, the Supreme Court's order states that the amendments to the Federal Rules of Civil Procedure "shall take effect on December 1, 1991, and shall govern all proceedings in civil actions thereafter commenced and, insofar as just and practicable, all proceedings in civil actions then pending." Order Re: Amendments to Federal Rules of Civil Procedure, 111 S.Ct. Preface 813 (April 30, 1991) (emphasis supplied). Congress delegated to the Supreme Court the authority to make changes in the Rules retrospective:
[Proposed rules of the Supreme Court] shall take effect no earlier than December 1 of the year in which such rule is [transmitted to Congress] unless otherwise provided by law. The Supreme Court may fix the extent such rule shall apply to proceedings then pending, except that the Supreme Court shall not require the application of such rule to further proceedings then pending to the extent that, in the opinion of the court in which such proceedings are pending, the application of such rule in such proceedings would not be feasible or would work injustice, in which event the former rule applies.
20 U.S.C.A. § 2074(a) (Supp.1993).

. Only two courts of appeals' decisions have declined to apply the amendment to Rule 15(c) retrospectively, Diaz v. Shallbetter, 984 F.2d 850, 853 (7th Cir.1993) and Freund v. Fleetwood Enterprises, Inc., 956 F.2d 354, 363 (1st Cir.1992). But in Woods, a different panel of the Seventh Circuit determined to give effect to the Supreme Court's directive to apply the amended Rule to all pending cases "insofar as just and practicable” by essentially confining Diaz to cases in which the district court had dismissed the entire complaint prior to the effective date of the amendment. The court of appeals held that Rule 15(c) would apply retrospectively to all cases pending in the district courts on December 1, 1991. 996 F.2d at 885-86.
Freund was decided as it was by virtue of its odd assortment of facts, in light of which retrospective operation would have worked a “manifest injustice.” The court of appeals emphasized that (1) the plaintiff had lost a full jury trial involving almost the same issues against some other defendants and there was no reason to think a second trial's outcome would differ; and (2) it would likely have concluded its appellate review before the amendment took effect on December 1, 1991 had the plaintiff presented his "weak” arguments on appeal "in a more forthright manner.” 956 F.2d at 363.
The common thread coursing through both Diaz and Freund is the fact that proceedings in the district court had terminated prior to the effective date of the amendment. Since this special circumstance is missing here, even assuming Diaz and Freund are persuasive, they are inappo-site.

. Cf. Bechtel, 886 F.2d at 652 (holding that to show prejudice the party opposing the amendment of a complaint "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely" (internal quotation omitted) (emphasis supplied)), quoted in Dole v. Arco Chem. Co., 921 F.2d 484, 488 (3d Cir.1990); Evans Prods. Co. v. West Am. Ins. Co., 736 F.2d 920, 923 (3d Cir.1984) ("The principal test for prejudice ... is whether the opposing party was denied a fair opportunity to defend and to offer additional evidence....” (citations omitted)); Deakyne v. Commissioners of Lewes, 416 F.2d 290, 300 n. 19 (3d Cir.1969) ("Prejudice under [Rule 15] means undue difficulty in prosecuting a lawsuit as a result of a change of tactics or theories on the part of the other party.”); see also 6A Wright et al., Federal Practice and Procedure § 1498, at 126 ("[C]ourt[s] should not give special treatment to the careless or myopic added defendant whose alleged prejudice results from his own superficial investigatory practices or poor preparation of a defense. But at least when the facts relevant to one possible claimant do require a substantially different and more burdensome investigatory effort or when the initial action is not sufficiently *1190 serious to warrant a full-fledged investigation, a party should be able to rely on the statute of limitations when that claimant does not interpose his claim in time.”).

. Substantial support for the magistrate judge's conclusion that the Carlinos were not prejudiced exists on both factual and legal grounds: there is not a great difference, if any, between Trop World's third party cross-claims and Lundy's negligence claims. The amounts at stake are identical because Trop World sought full indemnification. See App. 22a, 23a (Third Party Complaint, First Count ¶ 2; id., Third Count, ¶ 2). Moreover, the legal issues the Carlinos needed to research and the facts they needed to investigate were substantially the same because Trop World sought contribution from the Carlinos as a joint tortfeasor pursuant to the New Jersey Joint Tort-feasors Contribution Act, 2A N.J.StatAnn § 53A-3 (1993), see App. 22a (Third Party Complaint, Second Count V 2), and because the Carlinos asserted a cross-claim predicated on the New Jersey Comparative Negligence Act, 2A N.J.StatAnn. § 15-5.1 (1993), see App. 43a-44a (Answer to Third Party Complaint at 4-5). Both Trop World's contribution claim and the Carli-nos' comparative negligence cross-claim required the Carlinos to address the substance of Lundy's complaint and to discover the facts underlying it.
There is also ample support for the magistrate judge's conclusion that the Carlinos had actually engaged in the preparation of a defense in the action that did not differ substantially from what their defense would have been had Lundy originally named them as defendants. Most importantly, the Carlinos' counsel attended all the depositions taken by the original parties. See App. 140a-41a (Nurse Slusher); App. 173a-74a (Maryann Strang); App. 201a-03a (Dr. Greenberg); App. 233a-35a (Mrs. Greenberg); App. 246a-47a (Verna Ayo).

. Of particular relevance to prejudice in a case such as this are the goals sought to be protected by statutes of limitations. See Fed.R.Civ.P. 15(c), advisory committee’s notes — 1966 amendment ("Relation back is intimately connected with the policy of the statute of limitations.”). On this note the Supreme Court has informed us that
[sjtatutes of limitations are primarily designed to assure fairness to defendants. Such statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.” Order of R.R. Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348-49, 64 S.Ct. 582, 586 [88 L.Ed. 788] (1944). Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights. Burnett v. New York Cent. R.R. Co., 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965); see National Iranian Oil Co. v. Mapco Int’l, Inc., 983 F.2d 485, 493 (3d Cir.1992). Since the exact same evidence, memories, and witnesses are pertinent to Lundy's original Complaint and Trop World’s Third Party Complaint as would be pertinent to Lundy’s Amended Complaint against the Carlinos, and since the district court was burdened with the claim and cross-claim already, none of the interests sought to be \ "otected by the applicable statute of limitations would be abridged were Lundy allowed to amend his complaint to name the Carlinos as defendants.

. These paragraphs allege:
2. At all times material hereto, Defendant acted, and failed to act, by and through its agents, servants, work persons and employees in the course and scope of employment.
4. At all times material hereto, Defendant, as the owner in possession of a hotel, restaurant and gambling complex open to the public, was under a duty to its business invitees to have proper first aid facilities and personnel available to its business invitees and was also under a duty to its business invitees to take reasonable action to render first aid to such business invitees, when necessary.
5. At all time[s] material hereto, Defendant knew, and had reason to know, that Plaintiff had suffered a cardiac arrest and required first aid, oxygen and other medical attention.
6. Defendant negligently, recklessly and carelessly failed to perform its duty to Plaintiff by failing to have such emergency-first aid facilities, oxygen or medical personnel available.
7. Although Defendant telephoned for an ambulance to take Plaintiff to the hospital, it otherwise rendered no first aid or emergency medical treatment whatsoever to Plaintiff, despite his crucial need for same.
8.Due to all the foregoing, Defendant increased the likelihood of harm to the Plaintiff.
App. 10a-lla (Complaint).

. While the district court did describe the magistrate judge's conclusion that Rule 15(c)(3) had been satisfied as being “clearly erroneous,” see Maj.Op. at 1183 n. 13; Mem.Op. at 25, the context of the sentence leaves no doubt that the court was referring to the magistrate judge’s conclusions of law, not his factual findings. The majority does not indicate otherwise. See Maj. Op. at 1177 (“Because the district court's decision regarding Rule 15(c) was based on the court's interpretation of the Federal Rules of Civil Procedure, we exercise plenary review of this decision_”). I am puzzled, then, by the majority’s assertion that it owes "no deference” to the magistrate judge's findings of fact. See Maj.Op. at 1183 n. 13. Insofar as the district court adopted (that is, did not disapprove of) the magistrate judge's findings of fact, we review them for clear error. That is, while the district court may review the magistrate judge's findings of fact de novo under Federal Rule of Civil Procedure 72(b), an appellate court may not, for the obvious reason that we are reviewing the district court’s, not the magistrate judge’s, findings of *1192 fact, and such review is governed by the clearly erroneous standard.

. See Garvey, 993 F.2d at 778 n. 6, 783 n. 17 (allowing plaintiff to amend his complaint to add the United States as a defendant under the Federal Tort Claims Act where plaintiff had initially sued individual federal officials under a Bivens theory); Fromson v. Citiplate, Inc., 886 F.2d 1300, 1303-04 (Fed.Cir.1989) (allowing the plaintiff to relate back the amendment of his complaint to add the two owners of a corporation which already was a defendant as defendants); Berndt, 796 F.2d at 883-84 (allowing the plaintiff to substitute state officials for the state and a state agency in a § 1983 case); Itel Capital Corp. v. Cups Coal Co., 707 F.2d 1253, 1258 & n. 9 (11th Cir.1983) (allowing the plaintiff to relate back the amendment of his complaint to add a new defendant after the limitations period had expired: "we read the word 'mistake’ in Rule 15(c) liberally.”); Heinly v. Queen, 146 F.R.D. 102, 107 (E.D.Pa.1993) ("The ‘mistake condition' in [the] third element is not limited to cases of misnamed or misdescribed parties, rather the Rule is widely-understood to allow the addition of new parties that were never originally named or described.” (citing Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc., 801 F.Supp. 1450, 1457 (E.D.Pa.1992)); Smith v. TW Servs., Inc., 142 F.R.D. 144, 149-50 (M.D.Tenn.1991) (allowing plaintiff to add a separate defendant not named in the initial complaint); Swartz, 91 F.R.D. at 547 (holding that a "new defendant should have known that but for a mistake concerning identity *1193 the action would have been brought against him ... ‘whenever a party who may be liable for the actionable conduct alleged in the Complaint was omitted as a party defendant.'" (quoting Williams v. Avis Transp. of Can., Ltd., 57 F.R.D. 53, 55 (D.Nev.1972))); 6A Wright et al., Federal Practice and Procedure § 1498, at 126-29 ("The word 'changing' [in Rule 15(c) ] has been liberally construed by the courts, so that amendments simply adding or dropping parties, as well as amendments that actually substitute defendants, fall within the ambit of the rule- [T]here is no justification for a restrictive interpretation of the word ‘changing’ that would require a plaintiff to choose among defendants.” (emphasis supplied)); cf. Loudenslager v. Teeple, 466 F.2d 249, 250-51 (3d Cir.1972) (allowing the plaintiff to amend his complaint to substitute the personal representative of the decedent's estate for the decedent); see also 6A Wright et al., Federal Practice and Procedure § 1498, at 103-04 (stating that Rule 15(c) "alters the general rule that new parties ... cannot be added to an action by amendment after the applicable limitations period has expired" (emphasis supplied)), cited with approval in Bloomfield Mech. Contracting, Inc. v. Occupational Safety & Health Review Comm’n, 519 F.2d 1257, 1262 (3d Cir.1975); Dandrea v. Malsbary Mfg. Co., 839 F.2d 163, 166 (3d Cir.1988) (deciding whether plaintiff’s amendment changed the party or merely updated the party's name); Mitchell v. Hendricks, 68 F.R.D. 564 (E.D.Pa.1975) (allowing plaintiff's amendment of his complaint to relate back where plaintiff mistakenly named the wrong person as the defendant and the newly named defendant had received informal notice of plaintiff’s initial corn-plaint). But cf. Worthington v. Wilson, 8 F.3d 1253, 1256-57 (7th Cir.1993) (reading Rule 15(c) to exclude naming a different party "due to a lack of knowledge as to their identity" rather than as to their correct name); Campbell v. Ward, 792 F.Supp. 1150, 1153 (E.D.Mo.1992) (same); Wells v. HBO & Co., 813 F.Supp. 1561, 1567 (N.D.Ga.1992) (denying plaintiff's motion to amend complaint where plaintiff had deliberately not sued a party whose identity plaintiff had known from the outset).
The many other courts to have recognized the "identity of interest" exception to Rule 15(c) have also necessarily held that Rule 15(c) allows for the addition of a party, rather than only for the correction of a party’s name. See, e.g., In re Allbrand Appliance & Television Co., 875 F.2d 1021, 1025 (2d Cir.1989). See generally Wright et al., Federal Practice and Procedure § 1459.

. Federal pleading rules rely only on "notice pleading.” See Fed.R.Civ.P. 8(a)(2) (a complaint shall set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" (emphasis supplied)). The Supreme Court rehearsed the proper role of pleadings in Conley v. Gibson, 355 U.S. 41, 47-48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957):
[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is “a short and plain statement of the claim” [, Fed.R.CivP. 8(a)(2),] that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests_ Such simplified "no *1194 tice pleading” is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and. issues.... The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.
Id. (citation substituted for footnote); see Universe Tankships, Inc. v. United States, 528 F.2d 73, 75 (3d Cir.1975) (notice pleading requires a party only to “disclose adequate information as the basis of his claim for relief” (internal quotation omitted)); see also, e.g., Quinones v. United States, 492 F.2d 1269, 1273 (3d Cir.1974) ("a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' " (quoting Conley, 355 U.S. at 45-46, 78 S.Ct. at 102)).
The Appendix of Forms to the Federal Rules of Civil Procedure, Form 9, is illustrative of the bare-bones allegations recommended by the Rules in a negligence action. That form calls for an "[a]llegation of jurisdiction,” a brief description of the underlying event, a brief description of plaintiff's injuries, and a prayer for relief. For this reason I remonstrate that the majority in effect relies on the fact that Lundy complied with the lax standards established by the Rules, rules designed to prevent errors in pleading technicalities from displacing resolutions on the merits, to argue that the plaintiff did not provide adequate notice. To the contrary, I find these lax standards important because the Carlinos should have known that under the federal rules Lundy was not bound by the exact allegations or the precise theories encapsulated in his Complaint, and thus they could not have reasonably relied on other theories of liability, additional facts, or additional parties not being added later. In sum, the philosophy of federal notice pleading is an essential backdrop when adjudging what a potential defendant "should have known,” and what the Carlinos "should have known” when they were served with a copy of Lundy’s complaint even though no employee of theirs was specifically named therein.

. There is no denying that Lundy was sluggish amending his complaint. The record shows that on September 12, 1991, Trop World filed its Third Party Complaint against the Carlinos. See App. 21a-39a. A cursory reading of the attached Contract for Medical Services, particularly in light of the common knowledge that medical doctors are often independent contractors, would have revealed to a reasonable attorney that the Carlinos were independent contractors who were responsible for providing nursing services at Trop World during the time that Nurse Slusher provided medical assistance to Lundy. See App. 29a, 34a (Contract for Medical Services at 2, 7). Moreover, on both December 26 and December 31, 1991, the Carlinos' counsel informed Lundy’s counsel that Nurse Slusher no longer worked for the Carlinos. App. 455a (Letter of 12/26/91); id. 456a (Letter of 12/31/91). Finally, Lundy deposed Nurse Slusher and the Greenbergs in mid March, 1992. Nevertheless, Lundy did not seek to amend his complaint to add the Carlinos as defendants until May 28, 1992, about eight months after Lundy should have known that the Carlinos were independent contractors, about five months after he should have known that the Carlinos employed Nurse Slusher, and over two months after he had actual knowledge of Nurse Slusher's employment situation.
At oral argument Lundy tried to explain away the delay by reference to his fear of Rule 11 sanctions. See FedJR.Civ.P. 11 (authorizing sanctions against parties asserting groundless claims). But that does not illuminate the reason for the two-month delay after Lundy had deposed his final fact witness. Moreover, that answer does not explain why there was any more reason to fear Rule 11 sanctions for naming the Carli-nos, already parties to the litigation, as defendants as opposed to naming Trop World as a defendant when he initiated his suit.

. See Keller v. Prince George’s County, 923 F.2d 30, 34 (4th Cir.1991) (reasoning that because plaintiff did not file a complaint against the defendants before the running of the limitations period, although she was aware of their identity and involvement from the day the underlying events occurred, they had no reason to suspect that but for a mistake as to their identity she would have originally named them); Kilkenny v. Arco Marine Inc., 800 F.2d 853, 856-57 (9th Cir.1986) (refusing to allow plaintiff to name the original defendant’s subsidiaries as defendants in an untimely amendment because the subsidiaries had no reason to know plaintiff was mistaken about their identity: the plaintiff had been informed by the original defendant two years before the statute of limitations ran that the subsidiaries were probably the proper defendants and the plaintiff had sued the subsidiaries in another forum, which suit was dismissed after 14 months (nine months before the running of the statute of limitations) for lack of prosecution), cert. denied, 480 U.S. 934, 107 S.Ct. 1575, 94 L.Ed.2d 766 (1987).

. Anderson held that the district court improperly refused to allow plaintiffs to relate back their amendment of their complaint to name the parent of the original defendants as a defendant. The plaintiffs had learned of the parent's identity only after the limitations period had expired, but then they failed to seek to amend their complaint for nine months and waited an additional two months to serve the new defendant.

. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (holding that absent “undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the amendment, futility of the amendment, etc.,” leave to amend should be freely given (emphasis supplied)); Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir.1993) ("In the absence of substantial or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." (emphasis supplied)) (affirming district court’s denial of an amendment sought three years after initiation of the action, at which time plaintiff already knew most of the relevant facts, and two years after her second amendment of the complaint, at which time she probably knew all the facts); see also 3 James Wm. Moore & Richard D. Freer, Moore’s Federal Practice ¶ 15.-08[2], at 15-49 (2d ed. 1993) (stating that leave to amend should not be granted if the moving party has acted for the purpose of delay, the opposing party will be unduly prejudiced, or the trial of the issues will be unduly delayed); id. ¶ 15.08[4], at 15-69 to -75 ("The most common reasons for denying leave to amend are- that the amendment will result in undue prejudice to the other party, is unduly delayed, is offered in bad faith or for dilatory purposes, or that the party has had sufficient opportunity to state a claim but has failed" (emphasis supplied, footnotes omitted)).

. See Cornell & Co., Inc. v. Occupational Safety & Health Comm'n, 573 F.2d 820, 823 (3d Cir.1978) (“Delay alone ... is an insufficient ground to deny an amendment, unless the delay unduly prejudices the non-moving party.”); Adams, 739 F.2d at 868 (“The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,’ placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party.”); Deakyne v. Commissioners of Lewes, 416 F.2d 290, 300 n. 19 (3d Cir.1969) (“We do not believe delay alone is a sufficient measure of prejudice^] the element of delay is pertinent only to the extent that it combines with some extrinsic occurrence which brings about actual and significant prejudice to the opponent.” (internal quotation omitted)); see also 3 James Wm. Moore & Jo D. Lucas, Moore’s Federal Practice ¶ 15.08[4], at 15-76 (2d ed.1994) ("It should be emphasized, however, that while laches and unexcused delay may bar a proposed amendment, delay alone, regardless of its length, is not enough to bar it if the other party is not prejudiced.”).

.See Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 939 (3d Cir.1984) (“[Tjhe delay exception in amending the complaint refers to delay in the actual proceeding in which the complaint occurs, not delay in bringing suit.”), cert. denied, 469 U.S. 871, 105 S.Ct. 221, 83 L.Ed.2d 150 (1984); Adams, 739 F.2d at 868-69 (stating that "undue delay” refers to placing "an unwarranted burden on the court” and holding that plaintiff's delay in amending the complaint to add a new legal theory until after defendant was granted summary judgment by this Court on an interlocutory appeal did not constitute "undue delay”).

. I agree with the majority's reading of New Jersey law concerning relation back of pleading amendments, see Maj.Op. at 1183-84; see Lawlor v. Cloverleaf Memorial Park, Inc., 56 N.J. 326, 266 A.2d 569, 576-79 (1970); Greco v. Valley Fair Enters., 105 N.J.Super. 582, 253 A.2d 814, 815-16 (App.Div.1969); De Sisto v. City of Linden, 80 N.J.Super. 398, 193 A.2d 870, 874-75 (Law Div.1963), and thus concur that Lundy has not brought himself within Rule 15(c)(1).

. I note that Lundy has not proffered any evidence that Trop World advertised the availability of medical services on the premises and that he patronized Trop World on that basis. Thus the majority does not consider to what extent, if any, these factors would influence the analysis of Trop World's duties or the application of New Jersey's Good Samaritan Act. On a similar note, Lundy has also not claimed he was an intended third party beneficiaiy of the contract formed between Trop World and the Carlinos, and so that issue is not before this Court either.

. In Adamowicz v. Claridge at Park Place, Inc., 522 N.Y.S.2d 884, 135 A.D.2d 769 (1987), the New York Supreme Court, Appellate Division, purported to apply New Jersey law when it held in a case much like this one that a casino/hotel owed “no duty, either at common law or by statute, rule, or code, ... to render aid to a sick patron.” 522 N.Y.S.2d at 885. The court, however, did not bother to cite a single New Jersey statute or case, or, for that matter, any sister state's law or other legal authority in support of its conclusion. Such "authority” is singularly unpersuasive.

. Cf. Moody v. Security Pac. Business Credit, Inc., 971 F.2d 1056, 1063 (3d Cir.1992) ("[wjhere Pennsylvania law is silent, we may look to the law in other jurisdictions”); Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co., 652 F.2d 1165, 1167 (3d Cir.1981) (we may consider "[t]he policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and the decisions of other courts,” and may additionally "consult treatises, the Restatement, and the works of scholarly commentators”); McKenna v. Ortho Pharmaceutical Corp., 622 F.2d 657, 663 (3d Cir.1980) ("In sum, a federal court attempting to forecast state law must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data.”), cert. denied, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980).

. Section 314A has met with astounding success: the great majority of the cases mentioned in this section handed down after 1965 adopt it or cite it with approval. Incidentally, the lone published New Jersey case to reference § 314A, albeit tangentially, did so approvingly. See McIntosh v. Milano, 168 N.J.Super. 466, 403 A.2d 500, 509 (Law Div.1979).

. Comment f to § 314A of the Restatement provides:
The defendant ... is not required to take any action beyond that which is reasonable under the circumstances. In the case of an ill or injured person, he will seldom be required to do more than give such first aid as he reasonably can, and take reasonable steps to turn the sick man over to a physician, or to those who will look after him and see that medical assistance is obtained.
Rest.2d (Torts) § 314A cmt. f (emphasis supplied); see id. illus. 1, 5, 7.

. An early landmark decision departing from the traditional hesitation by courts to impose an affirmative legal duty to act was handed down by the Minnesota Supreme Court in the celebrated case of Depue v. Flateau, 100 Minn. 299, 111 N.W. 1, 3 (1907) (holding that the defendant, who was visited by a business-invitee who took ill during his visit, owed the invitee a duty to take reasonable steps to assure the plaintiff's well- *1201 being if the defendant appreciated plaintiff’s condition; to satisfy his duty, the defendant need not necessarily have entertained the plaintiff through the night — although if reasonable under the circumstances he should have — but had only to do what was reasonably possible given the situation, such as contacting his neighbors or summoning care). Courts have in the time since imposed other reasonable obligations besides summoning aid on businesses. See, e.g., Estate of Starling v. Fisherman’s Pier, Inc., 401 So.2d 1136, 1138 (Fla.Dist.Ct.App.1981) (holding in a case where a proprietor had knowingly left an inebriated man lying alone and unconscious on a pier near the water that a proprietor has a duty to safeguard a customer upon its premises whom it knows is exposed to extreme hazards, even if the customer brought the hazard upon himself; the customer had fallen into the ocean and drowned), petition denied, 411 So.2d 381 (Fla.1981); Lloyd v. S.S. Kresge Co., 85 Wis.2d 296, 270 N.W.2d 423, 426 (Ct.App.1978) (holding that a business which, although it was freezing cold outside, refused to let a customer it knew or should have known to be ill remain in the store for ten minutes after closing while she waited for her ride, could be liable for negligence because it had to take reasonable steps to shelter a customer); L.S. Ayres & Co. v. Hicks, 220 Ind. 86, 40 N.E.2d 334, 336-38 (1942) (holding that, while a business must not attend a dangerous instrumentality on its premises, a business must must act reasonably once alerted to the danger of an ongoing injury to an invitee if the aggravation of the injury is caused by the business' instrumentality, although the fact of the injury cannot be attributed to any negligence on its part; a child had fallen and caught his fingers between the steps and comb on the floor at the base of an escalator); Connelly v. Kaufmann & Baer Co., 349 Pa. 261, 37 A.2d 125, 127 (1944) (same).
Faced with scenarios evoking the duty actually to provide medical care, courts have consistently imposed on a business a standard of care satisfied by reasonable steps to summon medical aid and take other reasonable action to ameliorate the injury, but no more. See, e.g., Applebaum v. Nemon, 678 S.W.2d 533, 535-37 (Tex.Ct.App.1984) (holding that the daycare-child relationship imposed upon the daycare a common law duty "to render reasonable assistance to a child in its custody who becomes imperiled” and that "[i]n most circumstances the defendant will not be required to do more than administer whatever initial aid he reasonably can and knows how to do, and take reasonable steps to place the injured person in the hands of a competent physician" (emphasis supplied); the daycare center was not obligated to have present medically trained employees who could administer CPR, a relatively simple first aid technique to learn and administer, or other medical assistance in times of emergency, and it had no duty to train its employees to deal with a medical emergency effectively); see also Baca v. Baca, 81 N.M. 734, 472 P.2d 997, 1001-02 (Ct.App.1970) (holding that a bar which had turned a customer injured in a bar room brawl over to the police's custody as a drunk without troubling to inform them of his serious injuries may have breached its "duty to take reasonable care of him”). A common contemporary occurrence in which courts have directly addressed whether a business is required to provide minimal first aid — typically the Heimlich Maneuver — or whether its duty is satisfied simply by taking reasonable steps such as promptly calling for emergency help is in restaurant choking cases. Although, like CPR, the Heimlich Maneuver is a relatively simple yet astonishingly successful emergency technique, influenced by the infrequency of fatal chokings and the rapid employee turnover common to restaurant work, the clear majority rule is that there is no duty to provide emergency treatment. See Drew v. Delay’s Sportsmen’s Cafe, Inc., 806 P.2d 301, 305-06 (Wyo.1991); Coccarello v. Round Table of Coral Gables, Inc., 421 So.2d 194, 195 (Fla.Dist.Ct.App.1982) (per curiam); Parra v. Tarasco, Inc., 230 Ill.App.3d 819, 172 Ill.Dec. 516, 518, 522-23, 595 N.E.2d 1186, 1188, 1192-93 (1992) (relying on a statute shielding restaurants from liability for failing to so aid choking patrons); Breaux v. Gino’s, Inc., 153 Cal.App.3d 379, 200 Cal.Rptr. 260, 261-62 (1984) (same); Acosta v. Fuentes, 150 Misc.2d 1013, 571 N.Y.S.2d 666, 667-68 (N.Y.Sup.Ct.1991) (same). But see City Nat’l Bank v. 4000 Restaurant, Inc., 372 So.2d 1146, 1147 (Fla.Dist.Ct.App.1979) (Anstead, J., dissenting).
Equally instructive are cases that have found no breach of a duty on the part of a business toward its invitees. See Traudt v. City of Chicago, 98 Ill.App.2d 417, 240 N.E.2d 188, 191 (1968) (holding that an airport had no duty to maintain "safety appurtenances and appliances” which it could employ to save drowning pilots, although it was foreseeable if not highly probable that, given the airport's location, some plane would crash into the surrounding lake); Harold's Club v. Sanchez, 70 Nev. 518, 275 P.2d 384, 386-87 (1954) (holding that a casino had no duty to commit a "privileged battery” to prevent an inebriated patron from riding upon an escalator, even if an injury appeared to be likely); Dumka v. Quaderer, 151 Mich.App. 68, 390 N.W.2d 200, 203-04 & n. 2 (1986) (holding that a business had no duty to aid or assist a customer who entered the premises in an inebriated condition and that the business violated no duty when it ordered the customer to leave, accompanied by his friends, and when it took no steps to assist him when it later learned that his friends had returned to the establishment, leaving him exposed to danger), appeal denied, 426 Mich. 861 (1986).

. I do not believe that the New Jersey Supreme Court would hold that Trop World had a duty to maintain emergency medical equipment, such as an intubation kit, on its premises in the first instance. My conclusion that there is a jury question in this case derives solely from the observation that Trop World did, in fact, have an intubation kit on the premises, and hence the only question is whether it would have been reasonable under the circumstances for Nurse Slusher to bring it to Dr. Greenberg, who had manifested his capacity to use it, once he requested it. This does not punish Trop World for maintaining such equipment on its premises, but merely implements the general negligence doctrine that one must act reasonably under the circumstances; the coincidental presence nearby of a lifesaving device is simply one of the relevant circumstances a jury may consider.

. Even though the majority mentions Dr. Greenberg's testimony that it took about twenty minutes for the ambulance to arrive, see Maj.Op. at 1175-76, I in no way suggest that a seventeen minute delay (twenty minutes less the three minutes from the time it was summoned it took the ambulance to arrive) before summoning medical care would be reasonably prompt under the circumstances: that issue is simply not before us.