SARA SZABO, GENERAL ADMINISTRATRIX AND ADMINIS-
TRATRIX AD PROSEQUENDUM OF THE ESTATE OF
CHARLES SZABO, ALSO KNOWN AS KAROLY SZABO,
DECEASED, PLAINTIFF-APPELLEE, v. THE PENNSYL-
VANIA RAILROAD COMPANY, A CORPORATION OF
PENNSYLVANIA, DEFENDANT-APPELLANT.

Argued October 5, 1943—Decided February 1, 1944.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and
COLIE.

For the plaintiff-appellee, *Philip Blacher*.

For the defendant-appellant, *John A. Hartpence*.

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE.   The defendant appeals from a
judgment recovered by the plaintiff, administratrix *ad prose-
quendum*, for the death of her husband, Charles Szabo.   The
action is brought under the Federal Employers Liability Act.
The deceased was defendant's employee and performed labor-
ious work in a section crew removing worn railroad ties along
the defendant's right of way and replacing them with others.
It is not disputed that he died from heat stroke which came
upon him on July 2d, 1941, while he was at work.

The first count of the complaint charged that it became
the duty of the employer under the circumstances to supply
"immediate attention and first aid;" the second count, that

the defendant undertook to care for Szabo and did so in a negligent manner as a result of which he died.

A motion for nonsuit and for a directed verdict was denied, the case submitted to the jury, and the learned trial judge instructed them that they must determine whether the defendant was negligent in failing to give proper emergency care to Szabo in his extremity, and whether that omission, if negligent, was the proximate cause of decedent's death; and, further, that if the jury found that the defendant company voluntarily assumed to assist Szabo and failed to exercise reasonable care in so doing and that such negligence was the proximate cause of his death then the jury might find a verdict for the plaintiff and against the defendant.

On the day when Szabo was stricken the weather was described as "heavy and very muggy" with "no direct sunshine," a humid day. The maximum temperature was 96 degrees Fahrenheit, the minimum 74 degrees; at five o'clock in the afternoon the thermometer stood at 83 degrees. Mr. Szabo stopped work at about 2:30 that afternoon. Plaintiff's witnesses, fellow employees, testified that Szabo had performed his share of the work, which was laborious; that after the noon hour Szabo "looked sick," "had a white color;" that he drank an unusual amount of cold water and, when advised against so doing, replied that he was "very thirsty." A fellow employee told Szabo that if he didn't feel well he should go home to which Szabo, apparently a faithful employee, answered that he was "ashamed" to go home. Later the foreman, Michael Curran, requested Louis Bolla, a fellow employee, to take Szabo home. This witness testified that he didn't know what was the matter with Szabo except that he was sick. He, accompanied by another employee who had an automobile, took Szabo home. They helped him into the house, found no one at home, and left him seated in the kitchen. Asked to describe Szabo's appearance, the witness said he was red in the face. Before they left Bolla asked Szabo how he felt and the witness said Szabo "motioned with his hands" that they should leave. The decedent's son, William, testified that he reached home that afternoon at about ten minutes before four and found his father lying on the

bedroom floor. A motion for nonsuit was made at this juncture on the ground that the employer had no duty in the premises and was guilty of no negligence. The motion was overruled, appropriate exception was entered and the defendant went to its proof. Two fellow employees testified, one that Szabo was "all right" during the morning working hours; that he did not see him after lunch; and that he stopped to see him on his way home at 3:45 P. M. Another, that Szabo was in "very bad shape" at about 1:45 P. M. on the day in question. The foreman, Curran, said that he first noticed that Szabo was not well at about 2 P. M.; that his hands "were shaking a bit" and that he cautioned him against drinking any more water; he also advised him to sit down for a while and that he would be all right; that Szabo did so and after a short time returned to his work. The foreman again told him to rest but again Szabo wanted to resume work, whereupon the foreman told him to sit down, saying, "You stay there until I tell you to come back." At that time it was getting on to three o'clock. The foreman further testified that he did not think Szabo ought to walk to the tool shed in the heat, so he got one of the men who had an automobile to take him home. This concluded the defendant's case. A motion for direction of verdict for the defendant was denied.

In this state the law seems to be that in the absence of contract there is no duty upon the part of an employer to provide medical assistance or other means of being cured to an ill and diseased employee even though the illness or disease arose from the negligence of the employer. *Koviacs* v. *Edison Portland Cement Co.*, 3 *N. J. Mis. R.* 368, 369, citing 18 *R. C. L.* 506; 26 *Cyc.* 1049. A careful appraisal of the testimony in the case persuades us that there was no evidence upon which it can be fairly said that the employer, having assumed the duty of caring for the decedent, performed that duty negligently.

The testimony of Curran stands undisputed. He noticed that Szabo was not well. He believed his distress was caused by the heat of the day; he told him to cease working and take a rest and yet Szabo returned to work not once but

twice until Curran determined that it would be better to send him home. The fact that there was no one at home to call a doctor is a circumstance that may not be charged against the employer. An employer may not turn away from an employee who had been perhaps mortally injured and leave him unprovided for. But such is not this case.

We think the motion for nonsuit should have been granted at the end of the plaintiff's case and at the end of the whole case the motion for directed verdict for the defendant should likewise have prevailed because there was no proof that the death of the decedent was caused by any act of the employer which had been negligently performed. No evidence in the case leads to the fair assumption that the employer had knowledge, or should have had, that the employee was mortally stricken.

The rule enunciated in *Cortez* v. *Baltimore Insular Line,* 287 *U. S.* 370, relied upon by the court and plaintiff's counsel, is not a pertinent or apt principle for the facts of this case.

The judgment is accordingly reversed.