[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 88 
This is an appeal from a judgment of nonsuit entered in the Essex County Court of Common Pleas in an action under the Federal Employers' Liability Act to recover for injury allegedly resulting from the negligence of the defendant.
On August 24, 1944, while in the employ of the defendant railroad as a fireman, the plaintiff was ordered to report to the engineer in charge at the Meadows Yard, Jersey City. He did so and while engaged in his work a steel sliver went through his glove and punctured his skin. Thereupon the engineer sent him to the assistant yard master for first aid treatment. He told the assistant yard master about the sliver, received iodine and band-aid which he placed on the wound, and then returned to work shoveling coal. On the following day the engineer sent him to the doctor's office where his *Page 89 
finger was dressed by a nurse and he was told that he should come back "in a couple of days" if his finger still bothered him. That afternoon he was ordered to sign up for a trip on a fast freight to the Potomac Yards in Virginia. He left the Meadows Yard at 4:45 P.M. and arrived at the Potomac Yards during the following morning at 7 A.M. Although no coal shoveling was required, his duties still required the use of his hands. About four hours after he left Jersey City his finger swelled, he was in severe pain, and it was necessary to loosen his bandage. No first aid or other medical equipment was available on the trip.
When he arrived at Alexandria, Virginia, he was in great pain and reported to the assistant yard master or crew dispatcher who directed the engineer to take him to the Alexandria Hospital. However, he was not taken to the hospital until 1:30 P.M., six and one-half hours after his arrival, the plaintiff testifying, that "the engineer was tired; he wanted to get some sleep. That is why he held off to 1:30 to take me to the hospital." The interim hours were spent at the Railroad Y.M.C.A. When he arrived at the hospital with the engineer, the plaintiff was immediately placed under an anesthetic, a hole was bored in his finger, a drain was placed therein, and his finger was heavily bandaged. He was discharged about 5 P.M. and was instructed to take sulfa pills every hour. He returned with the engineer to the Railroad Y.M.C.A. and tried to sleep but was unable to do so because of the pain. His return trip was scheduled for 2:30 A.M. and he arrived at the yard about 2:15 A.M., at which time he spoke to the assistant yard master or crew dispatcher and told him he was in pain and "wanted to deadhead home," i.e., ride home as a passenger. This request was refused, the plaintiff being told that there was a severe manpower shortage; that the defendant "couldn't wait to send a man up from a different division to cover the job," and that the plaintiff "had to cover the job, because they had nobody to cover it." Accordingly, the plaintiff worked on the return trip home, using his hands, and arrived at the Jersey City yard nine and one-half hours later. His condition had become *Page 90 
progressively worse and as soon as he arrived at Jersey City the crew dispatcher immediately sent him to the Jersey City Medical Center where he was admitted to the emergency ward after a wait of two hours. He remained at the Medical Center seventy or seventy-one days during which period four operations were performed on his finger.
All of the medical attention was arranged for by the plaintiff's supervisory employees and he was not called upon to pay for any portion thereof. The rules of the railroad provide that in case of injuries to persons occurring on the railroad "first aid and medical care must be provided as prescribed in special instructions on time-table." The special instructions state that employees injured on company property will be treated by the nearest physician named therein without cost and that if hospital attention is necessary they should be sent, if practicable, to one of the hospitals named therein. Employees are instructed in the rules to report promptly to supervisors "all injuries, no matter how trivial" and to obtain immediately, "first aid and, if necessary, medical attention for all injuries."
At the close of the taking of the testimony from which the jury might infer the foregoing facts, the plaintiff rested his case "with the exception of calling the treating physician and offering the Medical Center hospital records." Thereupon the defendant moved for a nonsuit on the ground that there was no testimony indicating any negligence on the defendant's part which proximately resulted in or aggravated the plaintiff's injury. The motion was granted and the plaintiff's appeal is from the judgment entered thereon.
The Federal Employers' Liability Act (45 U.S.C.A., §§ 51 etseq.) authorizes an employee of an interstate railroad carrier to recover for injury if it resulted "in whole or in part from the negligence of any of the officers, agents or employees of such carrier." Although the act retained the employee's burden of presenting evidence from which such negligence and causal relation to his injury could be inferred [Cowdrick v.Pennsylvania Railroad Co., 132 N.J.L. 131 (E. A. 1944);certiorari denied, 323 U.S. 799, 89 L.Ed. *Page 91 
637 (1945)] it removed the defense of contributory negligence as a total bar to recovery (45 U.S.C.A., § 53) and by an amendment likewise removed the defense of assumption of risk (45U.S.C.A., § 54). See Tiller v. Atlantic Coastline RailroadCo., 318 U.S. 54, 58, 87 L.Ed. 610, 612 (1943) where the Supreme Court held "that every vestige of the doctrine of assumption of risk was obliterated from the law by the 1939 amendment;" that the employer's liability was to be determined under the general rules defining negligence, in part, as "the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation;" and that where, from the evidence presented, different inferences as to the negligence of the carrier might be drawn, the case should go to the jury. See, also, Blair v. Baltimore Ohio R. Co.,323 U.S. 600, 89 L.Ed. 490 (1945) where the court pointed out that the duty of the employer becomes more imperative as the risk increases and that the employer's negligence may be determined by viewing its conduct as a whole, particularly where the several alleged elements of negligence are closely interwoven.
Applying the foregoing principles to the testimony presented in the court below, we are satisfied that there was sufficient evidence to require the denial of the motion for nonsuit. In support of this conclusion we need refer only to the two instances in the course of the defendant's entire conduct which the jury might deem to have furnished the more significant bases for the plaintiff's allegation of negligence, namely, (1) the delay from 7 A.M. to 1:30 P.M. in taking the plaintiff to the Virginia hospital, and (2) the assignment of the plaintiff to work involving the use of his hands, despite his request that he be permitted to ride home as a passenger.
 1.
With respect to the delay in taking the plaintiff to the Virginia hospital, the defendant contends that upon his arrival in Virginia the plaintiff was "on his own" and that it was under no duty to furnish medical or hospital care. *Page 92 
The common law concept that employers are under no obligation to furnish care to sick or disabled employees has properly been the subject of broadening exceptions resulting from our changing industrial relations and accompanying moral standards. See Szabov. Pennsylvania Railroad Co., 132 N.J.L. 331 (E. A. 1945);Anderson v. Atchison T. S.F. Ry. Co., 333 U.S. 821,68 S.Ct. 854, 92 L.Ed. 1108 (1948). In the light of the circumstances presented, we are not at all prepared to say that the defendant would have been within its rights in entirely discarding and refusing aid to its seriously injured employee in a strange city far from home and presumably without adequate funds. However, we need not pursue this issue since assuming that no duty of aid existed there was ample evidence from which the jury could infer that the defendant had voluntarily undertaken to aid in the care of its injured employee, first, by its rules which were admissible in evidence [Cf. Tennant v. Peoria PekinUnion Ry. Co., 321 U.S. 29, 88 L.Ed. 520 (1944); rehearing denied, 321 U.S. 802, 88 L.Ed. 1089 (1944); Kurn v.Stanfield, 111 F.2d 469, 473 (C.C.A. 8th 1040)] and, second, by its actual conduct in assuming control over the medical care and hospitalization of the employee at all stages, including his stopover at Virginia. When it assumed such control it accepted the obligation of using due care for his safety and welfare. Cf. Nilsson v. Abruzzo, 107 N.J.L. 327, 330 (E. A. 1931); Tullgren v. Amoskeag Mfg. Co., 82 N.H. 268,133 A. 4 (Sup. Ct. 1926); Restatement, Torts, § 323 (1934). We believe that there was sufficient evidence from which the jury might infer, at least when considered with all the other pertinent evidence in the case, that the engineer's action in not fulfilling forthwith the yard master's instruction that plaintiff be taken to the hospital, did not constitute what a prudent person would ordinarily have done under the circumstances.
 2.
The defendant contends that no inference of fault was permissible from the assignment of the plaintiff to work on *Page 93 
his way home despite his injury and request that he be permitted to ride as a passenger. It has, however, frequently been held that an employer's conduct in directing that an employee do work beyond his capacity, as indicated by the circumstances, may constitute negligence. Cf. Blair v. Baltimore Ohio R. Co.,supra, where an employee, after informing his superior that certain pipes were too heavy to be moved and being told to do the work or someone else would be employed, went ahead with his work and was injured; the court held that there was sufficient evidence of negligence to be submitted to the jury. See, also, the cases collected by Judge Augustus N. Hand in Stewart v.Baltimore Ohio R. Co., 137 F.2d 527, 528 (C.C.A.2d 1943). We believe that an inference of negligence might similarly be drawn, at least when considered in conjunction with all the other pertinent evidence in the case, from the defendant's action in directing that the plaintiff, notwithstanding the patently serious nature of the injury to his finger, perform work involving the use of his hands, on his return trip home.
 3.
We consider that the evidence introduced on plaintiff's case was sufficient for the jury to infer not only that there were acts of negligence, but also that there was a causal relation between those acts and the extent of plaintiff's injury. In this connection it must be borne in mind that, with the trial court's approval, the plaintiff closed his case "with the exception of calling the treating physician and offering the Medical Center hospital records." Presumably the plaintiff will offer this additional testimony to supplement the record, not only with respect to the amount of plaintiff's claim for damages, but also with respect to the causal relation between the defendant's conduct and the extent of plaintiff's injury. In any event, it is proper that he be afforded an opportunity to do so.
There is a final thought which ought be mentioned. The Federal Employers' Liability Act creates a federal right *Page 94 
of action governed by federal rather than local rules of law. That right of action, unlike that granted in State Workmen's Compensation Acts, requires proof of negligence; but determination of that issue should always be left to the jury unless it clearly appears that there is an insufficiency of evidence from which negligence and causal relation might be inferred by fair minded men. See Bailey v. Central Vermont Ry.,Inc., 319 U.S. 350, 354, 87 L.Ed. 1444, 1448 (1943), where Mr. Justice Douglas, speaking for the Supreme Court, said:
"The right to trial by jury is `a basic and fundamental feature of our system of federal jurisprudence.' Jacob v. New York,315 U.S. 752, 86 L.Ed. 1166, 62 S.Ct. 854. It is part and parcel of the remedy afforded railroad workers under the Employers' Liability Act. Reasonable care and cause and effect are as elusive here as in other fields. But the jury has been chosen as the appropriate tribunal to apply those standards to the facts of these personal injuries. That method of determining the liability of the carriers and of placing on them the cost of these industrial accidents may be crude, archaic, and expensive as compared with the more modern systems of workmen's compensation. But however inefficient and backward it may be, it is the system which Congress has provided. To deprive these workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them."
The judgment below is reversed.