17 N.J. Super. 441 (1952)
86 A.2d 289
HELEN BURNS, ADMINISTRATRIX, ETC., PLAINTIFF-APPELLANT,
v.
BAKELITE CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 28, 1952.
Decided February 7, 1952.
*442 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Aaron Gordon argued the cause for the appellant (Messrs. Greenstone & Greenstone, attorneys).
Mr. Robert Shaw argued the cause for the respondent (Messrs. Shaw, Hughes & Pindar, attorneys).
The opinion of the court was delivered by BIGELOW, J.A.D.
The administratrix of the estate of Joseph Burns, deceased, alleging that decedent's death was caused by the negligence of his employer, the Bakelite Corporation, sues for damages. At the plant where decedent worked, the company maintained a dispensary or first aid station in charge of a registered nurse, Mrs. Broadie. It is the alleged negligence of the nurse on which the administratrix counts. The learned judge before whom the action was tried in the Law Division, took the case from the jury and rendered judgment for the defendant, whereupon the administratrix appeals.
Mrs. Broadie, testifying for plaintiff, said that Burns came to the dispensary about 10 o'clock on a certain morning, pale and perspiring, and the nurse thought he looked ill. He complained of a severe chest pain and thought he had indigestion and he wanted peppermint for it. Mrs. Broadie took his pulse and his temperature, and found both were *443 normal. He had no difficulty in walking. The nurse suggested he see a doctor, but he refused to see the plant doctor whose office was only about two blocks away, and he asked for his own physician, Dr. MacArthur. Mrs. Broadie tried unsuccessfully to reach him by phone. Then Burns asked her to send him home, so she summoned a car, a station wagon, and he was driven by the company's chauffeur to his home where he was received by his wife, who happened to be a trained nurse. By the removal of one of the station wagon seats, room could have been made for a stretcher, but Burns was not put on a stretcher. Mrs. Broadie reached Dr. MacArthur soon after decedent left the plant but he was engaged in an operation and had a colleague, Dr. Froelich, call immediately at decedent's home. The doctor diagnosed him as suffering from a coronary occlusion, that is, a block in one of the larger vessels of the heart. Later the same day, Dr. Froelich called a second time and had his patient taken to a hospital where, after six days, he died.
Generally, no duty rests on an employer to provide medical service or care for an ill or injured employee. Yet when the employee, while engaged in the work of his master, suffers a sudden illness that renders him unable to provide for his own care, the employer must put in his reach such medical care and other assistance as the emergency thus created may in reason require. The duty arises out of necessity. Szabo v. Pennsylvania R.R. Co., 131 N.J.L. 238 (Sup. Ct. 1944), reversed 132 N.J.L. 331 (E. & A. 1945). We think that decedent's condition and Mrs. Broadie's knowledge of his illness were sufficient to raise a duty in defendant to take reasonable precautions for his care. Or the same result may be reached in the present case, without regard to the existence of an emergency, on the principle that one who voluntarily renders service to another is liable in damages for injuries caused by a failure to use reasonable care in the performance of such gratuitous service. Bascho v. Pennsylvania R.R. Co., 3 N.J. Super. 86 (App. Div. 1949). The question then arises whether defendant fulfilled this duty.
*444 The symptoms that the nurse observed were typical of the onset of a heart attack, although they might indicate acute indigestion or some other condition. But a physician would probably have made a tentative diagnosis of a "coronary occlusion" because that is the most common cause of such symptoms. Based on that diagnosis, the standard emergency treatment would have been the administration of morphine to relieve the pain, not only for the patient's immediate ease but because the pain causes reactions in the heart that increase the damage to that vital organ. And the patient should not be permitted to walk or to make avoidable physical effort. But Mrs. Broadie is not a physician; she did not realize that Burns was suffering from a coronary thrombosis; she only knew he was ill and he did not appear to her to be seriously ill. Even if the nurse had made a diagnosis of heart attack, she was not authorized to administer morphine, for such drugs are administered only under the direction of a licensed physician.
Mrs. Broadie's suggestion that Burns see a doctor was entirely correct. She offered to call the plant doctor, but Burns was unwilling. Instead, he asked for his family physician, Dr. MacArthur. Him the nurse tried to reach by telephone, but was unable to do so. Clearly there was no negligence thus far. Burns next asked to be sent home, and Mrs. Broadie made arrangements to do so. She had the station wagon driven to the dispensary entrance, and Burns walked to the car and got in. Asked if she assisted him, she testified: "We tried to help him but he didn't want us to. He said he needed no assistance." At the end of the trip the station wagon stopped at the curb in front of Burns' home. The house is set back about 50 feet from the roadway and to reach the front door seven steps must be mounted. The chauffeur stepped out on the left-hand side, went around and opened the door for Burns and he got out by himself.
"Did you offer to assist him into the house? I did.
What did he say? He refused. He said he could get in by himself."
*445 Walking to the car, getting in and then out of it, walking to the house and climbing the stairs, undoubtedly put a strain on decedent's heart and may have hastened his death. It would have been much better if he had been placed on a stretcher in the infirmary and so taken home with a minimum of effort on his part.
There is no negligence indicated by Mrs. Broadie's failure to recognize the particular ailment from which Burns was suffering. But should the various symptoms that she observed and that we have recited have warned her it was dangerous to allow Burns to be taken home in the station wagon? If so, there was a failure to exercise due care. If fair-minded men, after carefully considering the facts, could differ in their answer, then the question should have been left to the jury. Gentile v. Public Service Coord. Trans., 12 N.J. Super. 45 (App. Div. 1951). Run over the facts again,  face pale, perspiring, severe pain in chest, pulse and temperature normal, walked without difficulty; the man himself thought he had indigestion; the nurse thought he looked ill, but not very ill. In our opinion, there was nothing to suggest that he was a stretcher case, or that there was need for other means than those employed, or for more care than was exercised in sending decedent home. We find no error in the award of judgment to defendant.
Affirmed.